## Paul Huff, Plaintiff in Error, v. Wells Fargo & Company, Defendant in Error.

### Gen. No. 13,927.

PERSONAL INJURIES—*distinction between licensee and one who is upon premises by invitation.* One on premises "not with a view of transacting any business with the owner is a mere licensee and the owner owes him no higher duty to protect him from injury than he would if he were a trespasser;" but, on the other hand, "the duty of the owner to one who comes there by the owner's invitation to transact business in which the parties are mutually interested is to exercise reasonable care for his safety while upon that portion of the premises required for the purpose of his visit;" and "under such circumstances the party is said to be on the premises by implied invitation of the owner." Pauckner · v. Wakem, 231 Ill. 276, followed.

Action in case for personal injuries. Error to the Superior Court of Cook county; the Hon. BEN M. SMITH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1907. Reversed and remanded. Opinion filed June 2, 1908.

W. G. JOHNSON and H. R. RATHBONE, for plaintiff in error.

HOLT, WHEELER & SIDLEY, for defendant in error.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This is an action by plaintiff in error to recover for personal injuries. At the close of the plaintiff's case

the court, on motion of the defendant, instructed the jury to find the defendant not guilty. It is contended that in this the court erred; that there is in the record evidence from which, standing alone, the jury could, "without acting unreasonably in the eye of the law, find that all the material averments of the declaration had been proven"; and that the cause should (Libby v. Cook, 222 Ill. 206-216) therefore have been submitted to the jury.

The defendant was the owner of a freight house located on Plymouth place and Taylor street, Chicago. The main freight room was above the street; and its floor was about on a level with the bed of an ordinary wagon. In this room was an elevator shaft, standing about the middle of the building, "with brick walls on both sides and corrugated iron doors," as there is evidence tending to show. The building was not very wide. Plaintiff was working for an employers' association which operated, among others, the wagons of defendant at that time, there being a teamsters' strike in Chicago. He was a helper on one of defendant's wagons thus operated, which was employed in picking up freight and conveying it to defendant's freight house. It was a part of his duty to assist in unloading the freight upon the floor of the freight house.

The day of the accident, May 3, 1905, a load of freight was brought to the freight house about seven o'clock P. M. by the wagon on which plaintiff was employed. The wagon was backed up to one of the large doors on the east side of the freight house. Plaintiff's testimony as to what occurred is as follows:

"We backed the wagon that I was on up to the door and I got off the driver's seat and went down probably two doors and clumb up into the building. I went there to get around the wagon. I couldn't get back over the freight, it was loaded so high, and then I went and got up to the platform and went across to the outside—the west side, that was a little clear, and on the east side the freight was piled up by the other teams

coming up and unloading before we did, and when I got back, I was pretty thirsty, and thinks I, I'll run down into the—I went down into the basement. I went down the day before, the second, to get a couple of pails of water for my horses after we had fed, so I went right down the back stairs at the south end and got my drink of water and came up and I was looking across to see where my team stood. We had a pair of white horses—after I left the basement I came up onto the first floor, walked right alongside of the west side of the building. It was clear there. The same way that I had gone down until I came opposite where the wagon was. I seen where the wagon was and two men that was out with us that day in a buggy was standing right behind the wagon talking, and I seen where the team was.''

Having reached a point opposite his wagon, he started directly eastward to go to it. The place at that point was somewhat dark and there were piles of goods in that part of the freight room. The darkness was intensified to plaintiff because he had just come from the light basement. Without perceiving the opening, he walked into an elevator shaft which was in the line of his advance toward the wagon, and fell to the basement, receiving the injuries complained of. On cross-examination he testified:

''My duties in connection with the wagon took me into the building. I had to get in there in order to get the hind end of it. I could not get back over the wagon, it was so full. The wagon was wide, one of them express wagons. They take up the whole door almost. There is not six inches on either side of them when they are backed up to the door. I got to get around—when the wagon was backed up there, then the freight was taken off.''

It is urged in behalf of the defendant that plaintiff was a mere licensee upon that part of defendant's premises; that his duties required him to go no further

into the building from the east door, where his wagon was, than was necessary to unload the freight from the wagon in the immediate vicinity of that door. Plaintiff testifies that he had never seen the elevator, did not know it was there, and that prior to that time he had only been "just right by the door where we took the freight off."

It is argued in defendant's behalf that plaintiff was, when injured, in that part of the building without invitation, express or implied; that of his own motion he "took it upon himself to go upon an exploration trip in search of water and made his way as best he could in the darkness and amid the confusion of boxes, barrels and packages incident to a freight house floor to the basement," where he had obtained water for his horses the day before. Hence it is said plaintiff was either a trespasser or a bare licensee, to whom defendant owed no duty, except to refrain from wilful or affirmative acts which are injurious, that he was a bare licensee as a matter of law.

It appears, however, from the testimony above quoted that plaintiff went into the building primarily not to get a drink of water, but "to get around the wagon"; that he could not get back over the freight on the wagon because "it was loaded so high"; that he went to the west side of the building because on the east side, where the wagon was, "the freight was piled up by the other teams coming up and unloading before we did," and that it was after he had gotten into the building and on the west side of it that he concluded to get the drink of water where he had gotten water the day before. According to this evidence, plaintiff's exploration trip was not begun in order to get the drink of water, but to get around to the rear of his wagon, where he says it was his business to help "unload the freight" and put it inside the building.

In Pauckner v. Wakem, 231 Ill. 276-280, the distinction between a mere licensee and one who is on the

premises of another by invitation, express or implied, is pointed out. It is said that one on premises "not with a view of transacting any business with the owner is a mere licensee, and the owner owes him no higher duty to protect him from injury than he would if he were a trespasser"; but, on the other hand, "the duty of the owner to one who comes there by the owner's invitation, to transact business in which the parties are mutually interested, is to exercise reasonable care for his safety while on that portion of the premises required for the purpose of his visit"; and "under such circumstances the party is said to be on the premises by implied invitation of the owner." In that case the appellee had left his work temporarily to attend to a call of nature, and in passing through the appellant's warehouse for that purpose fell into an unprotected elevator shaft. It was said (page 28) that "the invitation to go there for the goods must be held broad enough to include all the space occupied by the goods, together with necessary passways in and out of the warehouse"; notwithstanding that at the exact moment of the injury the appellee in that case was not engaged in the business of his employer. In Calvert v. Springfield Light Co., 231 Ill. 290-293, it is held that an owner of premises who by invitation, express or implied, leads others to go upon premises for any lawful purpose, is liable for injuries occasioned by unsafe conditions of the premises known to the owner, and that if there are hidden dangers the owner must use ordinary care to give persons rightfully upon the premises warning thereof, the duty extending to an independent contractor or his servants working upon his premises.

The distinction between a workman on premises by invitation who is injured while seeking a toilet room and the same workman when seeking a drink of water is not wide. Both of these are natural needs to the workman, and it is, we think, a fair question for the jury whether or not, under the facts of the particular case, the owner of premises has been negligent in fail-

ing to use ordinary care to keep them reasonably safe for such an employe. But in the case at bar plaintiff was, as he states, trying to get to the rear of his wagon to do the work for which he was employed. It was, we think, a proper question for the jury, whether the plaintiff in the case at bar was injured by reason of any negligence of the defendant or by reason of contributory negligence of his own.

As the case must be tried again, we refrain from discussion of the evidence. The judgment of the Superior Court must be reversed and the cause remanded.

*Reversed and remanded.*